Acting Commissioner of Social Security Joseph Sellers Good morning. May it please the Court, my name is Joseph Sellers, arguing on behalf of Mr. Hughes. Despite commenting on and thanking Mr. Hughes for his candid and sincere testimony, the Administrative Law Judge in this case found his allegations of subjective symptoms and their severity not credible. That conclusion, however, was based on improper legal analysis and is not supported by substantial evidence. Before an Administrative Law Judge turns the entire record to determine whether or not the claimant's subjective allegations are credible, the Commissioner requires the ALJ to first consider and determine whether or not the allegations are consistent with the objective medical evidence alone. The ALJ in this case did not make such a determination and never engaged in any analysis on that point. Because the evidence is consistent with Mr. Hughes' allegations, that was error, and that error warrants remand in this case. This disease seems to be a progressive disease, looking at all of the records that are before us. But what seems to be at least a subject of competing evidence, you can address this for me, to me, is how this disability affects one's capacity to do relatively non-strenuous work, whether it's light work, whether it's sedentary work, whatever. And I think that's where the case really turned when the ALJ was looking at it. I would agree with that to the extent that Mr. Hughes alleged that not only is he limited by the pain and decreased mobility and flexibility from his fused spine, but he also alleged that the fatigue from moving that body and maneuvering that body through even simple chores like taking care of his daughters gives him so much fatigue that he can't do six hours even of work two days in a row. So I realize, at least it appears to me, that the line of cases that you're relying on is the line in which we've said just because you can conduct daily chores at home doesn't necessarily mean you can work. It depends on how easily you can do them, more or less. If it takes you two hours to do something, it ought to take 10 minutes. That's not probative. But those are findings that need to be made from a record, right? That's correct, and it needs to take into consideration the entire record. And administrative law judges can't pick and choose the evidence which they rely upon if there's evidence that contradicts their conclusion, and they don't address that contradictory evidence. One of the things that hurts him is his statement that he stops looking for work because he doesn't think people want to work with somebody who looks like him, who's got the bent-over back that is typical for ankylosis spondylitis. That was an impression he gained from the interviews that he secured while he was looking for work after he lost his job, yes. Those good-faith efforts that he made failed, and they failed repeatedly. Did he attack the ALJs or the vocational expert? I was surprised that the vocational expert, when he's asked about someone who needs to be able to sit alternatively at will, provided that they're not off-task more than 10% of the work period, said that you could have a job selling furniture and managing retail. Ten percent sounded like a lot of time to be off-task. It is a lot of time, Your Honor, and that's the crux of this case. As you alluded to earlier, the fatigue and all of his other symptoms prevent him from being on-task even that much. And I can't speak for the vocational expert, but he testified, and that is what it is. He had visions of going to a furniture store and seeing somebody stretched out on the sofa for a while, but maybe not. Well, to his credit, the vocational expert did testify that taking unscheduled breaks outside of the breaks permitted, the one in the morning, one in the afternoon, and one at lunch, would preclude competitive work. Would preclude competitive work. Interesting. So even if that were seen as a sort of accommodation in an ADA sense of the term, people wouldn't want that. That's correct. It's more of what Social Security considers sheltered work, which is not competitive. Which is not competitive, yeah. And so as you're getting at, Your Honor, even if there was no harmful error at the first part of the symptom evaluation process, the ALJ's adverse credibility determination at the second step is not supported by substantial evidence because he ignored or at least failed to address evidence that contradicted each of the three grounds he relied upon for that credibility determination. And if there are no questions, I'll reserve the balance of my time. That would be fine. Thank you. Ms. Siegel. Good morning, Your Honors. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. The most compelling evidence in this case is something that the claimant's attorney didn't talk about, and that were the claimant's own statements about what he could do despite his impairments. And the ALJ did rely on this in determining the intensity, the persistence, and the functional impact of his symptoms. That particular testimony, as well as report statements, was about his abilities to lift and stand and walk and sit. And specifically, he said he was able to lift up to 50 pounds and at least 20 pounds. He was able to stand for four to six hours total in a day, walk for four to six hours in a day. So you're looking at page eight, is that right, of the ALJ opinion? Claimant contended he can sit for one to two hours, stand for one to two hours, walk for two blocks, sit, stand, and walk four to six. I think there's a paragraph toward the end of that page that I think here. It's page 18 of the transcript, yes, page eight of the ALJ's decision, where he's talking about lifting and standing and walking abilities. Now, of course, when you get to the last sentence of that paragraph, he does explain that things like the preparing simple meals, which turns out to be lunchables or something, do household chores. He said sandwiches. He's making sandwiches during the day. Bologna sandwiches, right. For his children. So he's slathering a piece of bologna on a piece of bread. But he says that it takes him a long time to do that, and he has to sit down and take a nap afterwards, and he's tired the next day after he mows the lawn. He has some elaboration about this. Right. During his testimony, he does qualify his statements. But in his reports, he is saying that, overall, he is able to do sitting and standing and walking better. Are we supposed to ignore the qualifications? No, we take it all into consideration. That's what the ALJ did. The ALJ looked specifically at what his statements were about lifting and standing and walking and sitting, and said with a sit-stand option, which is also something that the ALJ credited, the ability to switch between those positions, that that supports an ability to work and specifically to return to two of his different past jobs as a store manager and as a furniture salesman. Now, explain to me this statement from the vocational expert that you can be off task for 10% of the day. So you just take a break of six minutes every hour? Your Honor, this was not challenged in the claim. I know it's not, but it seems absurd to me. So I'm just asking. I've never been here for 21 years. I have never seen a case where a V.E. said that you could just take a break for six minutes out of every hour. That would be 10%. In fact, they usually say, you know, unscheduled breaks would keep you out of the workforce to that degree, because that amounts to, you know, practically 48 minutes over the course of a day. The V.E. was talking about taking normal 10 to 15-minute breaks, that that's something that is allowed. It says off task 10% of the time. That's not a 10-minute break. Off task 10% of the time. And that was testimony by a vocational expert that wasn't challenged, that he was given an opportunity to challenge it, and it wasn't challenged. The ALJ is allowed to accept a bottom line from a vocational expert, and he was talking about what the claimant could return to a vocational expert. It's the ALJ who says what jobs would be available for a person who also needs to be able to sit alternatively at will, provided they're not off task more than 10% of the work period. That's how they put it. So six minutes every hour, there are jobs in the national economy you can do. And they're not off task, that they're able to switch positions and remain on task is what. That's not what it says. It says provided they're not off task more than 10% of the work period. So if it's now the Social Security Administration's position that there are jobs out there for people like that, I guess a lot of people would like to know what they are. As I said, Your Honor, this was not something that was challenged by the claims attorney in a brief. So you think it's absurd, too, and maybe it's waived. I do believe it's waived. Okay. And the focus of the claimant's brief has been on the credibility analysis and criticizing the ALJ's use of the framework that is established in the regulations and the Social Security rulings. Well, the framework is the framework. Obviously, the framework is the framework. The thing that worries me about this case is the failure to take into account the pace at which he's able to do the things he says he can do, which does not seem to me his position is that that's not a working level pace. And we do have a lot of, again, if it takes two and a half hours to mow the lawn and it should take 20 minutes, that suggests that even if you can push a lawnmower around, it's not the way an employer would want you to do it. But the activities of daily living with regard to household chores, that was just one small factor that the ALJ considered. The most compelling evidence is really what the claimant said about what he could do as far as sitting and standing and walking and that he could switch between these positions. And also that he had this condition for many years while he was working. Right, but that's why I said if it's a progressive condition, then it's entirely consistent to think that he's had it for a long time, he's able to work with it for a long time, and he seems to be somebody who really is trying to stay in the workforce, but maybe at some point it's progressed to the point that he can't. But the clinical findings don't suggest that it's progressed to that degree. When he went to an examination by Dr. Hafiz during the period at issue, his gait was normal, and he had some flexibility loss in his neck, but his back was still 70 degrees of flexion. So it clearly hadn't progressed to the point where he was having a loss of flexibility in some of the most important parts of the spine. Right, but the measure between where the back of his cranium is to the wall keeps getting bigger and bigger. He's hunched over further and further. Right, and he is stooped forward, and that's something that the ALJ definitely considered. And he also accounted for it in the restrictions that he gave, where he did postural restrictions on peripheral vision, because of moving the head and abilities to do different postures that would be limited by something like a stooped forward posture. But he worked with that stooped forward posture for many years as well. It may be getting slightly worse, but it's not progressed to the point where he has no flexibility in his neck. The examination suggests he still has some flexibility going forward and to the sides. Right, and it also suggests that he's compensating to a bit by position of his eyes. He's having to look up to look forward. Which is why the ALJ compensated with peripheral vision. Okay. I'd just like to point out that the symptom evaluation had enough detail in it for the court to affirm it and for the court to decide that the ALJ's decision was supported by substantial evidence, and they should affirm the decision. Thank you. All right, thank you very much. Anything further, Mr. Sellers? Briefly, Your Honor. Thank you. The postural restrictions the government points to don't account for Mr. Hughes' fatigue, and that's the critical issue in this case. And his credibility analysis, whether it's at the first step or the second step, of the symptom evaluation process didn't address to any real extent that fatigue. So the postural limitations are all but irrelevant to the issue before this court. And if the government considers Mr. Hughes' testimony and self-reports the most compelling part of this case, then the other aspects of Mr. Hughes' testimony and personal statement should also be just as compelling. And those aspects that the ALJ ignored are those that show that Mr. Hughes cannot work a full-time job eight hours a day, five days a week, 50-odd weeks a year. And just as the postural restrictions don't account for the fatigue, the sit-stand option doesn't account for Mr. Hughes' need to rest between chores. It's not that he does a chore standing, sits down, and does a chore sitting. He's not knitting while he's sitting. He's taking a break. He's resting. He's not productive in his words. That's not consistent with full-time work, as the vocational expert testified. And for all the reasons we've briefed, the ALJ's decision is not supported by substantial evidence because he ignored evidence that contradicted his conclusions and supported Mr. Hughes' claim. Thank you. All right. Thank you very much. Thanks as well to the government. We'll take the case under advisement.